# EXHIBIT A

**SUMMONS**

Attorney(s) Anthony G. Bizien

Office Address  45 Essex Street, Suite 3 West

Town, State, Zip Code  Hackensack, NJ 07601

Telephone Number  (301) 587-9373

Attorney(s) for Plaintiff

Sehrish Mazhar

_____
Plaintiff(s)

vs.

Coronis Health, LLC

_____
Defendant(s)

## Superior Court of New Jersey

Union ▼ County

Law Division

Docket No: UNN-L-003008-23

## CIVIL ACTION SUMMONS

From The State of New Jersey To The Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov.

Michelle Smith
_____
Clerk of the Superior Court

DATED:  09/28/2023

Name of Defendant to Be Served:  Coronis Health, LLC

Address of Defendant to Be Served:  Resident Agent - CSC-Lawyers Incorporating Service Company
7 St. Paul Street, Suite 820, Baltimore, MD 21202

Revised 11/17/2014, CN 10792-English (Appendix XII-A)

**ZIPIN, AMSTER & GREENBERG, LLC**
Anthony G. Bizien, Esq.
NJ Attorney ID: 236942021
45 Essex Street, Suite 3 West
Hackensack, NJ 07663
T: (551) 244-1257
F: (240) 839-9142
abizien@zagfirm.com

*Attorney for Plaintiff*

| | |
|---|---|
| **SEHRISH MAZHAR** | **SUPERIOR COURT OF NEW JERSEY**<br>UNION COUNTY<br>LAW DIVISION |
| **Plaintiff,** | |
| v. | Docket No.: _____ |
| | **CIVIL ACTION** |
| **CORONIS HEALTH, LLC** | **COMPLAINT** |
| **Defendant.** | **JURY TRIAL DEMANDED** |

Plaintiff Sehrish Mazhar ("Plaintiff" or "Mazhar"), by and through undersigned counsel, hereby files this Complaint against Defendant Coronis Health, LLC ("Defendant" or "Coronis") to recover damages for violations of the New Jersey Law Against Discrimination, N.J.S.A. §§ 10:5-1, *et seq.* ("NJLAD"), the New Jersey Family Leave Act, N.J.S.A. §§ 34:11B-1, *et seq.* ("NJFLA"), the Family Medical Leave Act, 29 U.S.C. §§ 2601, *et seq.* ("FMLA"), and the New Jersey Wage Payment Law, N.J.S.A. §§ 34:11-4.1, *et seq.* ("NJWPL").

**PRELIMINARY STATEMENT**

1.      On December 6, 2022, Defendant terminated Plaintiff's employment while she was seven months pregnant and after she made multiple inquiries into the process for taking maternity leave.

2.      Even before her unlawful termination, ostensibly part of a reduction in force exercise, Plaintiff had been subjected to unlawful discrimination on the basis of her race (Asian), ethnicity (Pakistani), and national origin (Pakistan).

3.      Throughout her employment, Plaintiff was repeatedly passed over for promotions despite being well-qualified for the promotions. The overwhelming majority of these promotional opportunities were filled by white candidates. Despite being equally or more qualified than her peers, Plaintiff was never made aware of, or considered for, any open roles.

4.      Plaintiff made multiple complaints to Defendant's Human Resources ("HR") department and her superiors regarding the poor treatment to which she was subjected and the failure to consider her for promotional opportunities. Plaintiff specifically mentioned her race and ethnicity in her complaints, questioned why her promoted peers were nearly universally white, and asked, "Is it a race thing?"

5.      Defendant never took any action in response to Plaintiff's several complaints of discrimination and mistreatment.

6.      In the months leading up to her termination, Plaintiff asked HR about the process for taking maternity leave. She specifically asked HR whether her job would be protected even if she had not yet filed the paperwork required to take leave. HR assured Plaintiff that her job was protected from termination regardless of whether she had filed the required paperwork.

7.      Throughout her employment, Plaintiff was also denied promised salary increases. Most recently, in the final months and weeks of her employment, Plaintiff made several inquiries with HR and her superiors into when she would receive the $5,000 raise she was promised she would receive September 2022.

8.      Following her several complaints of discrimination, her self-advocacy for the salary increases she was promised, and her announcement of her intention to take maternity leave, Defendant unlawfully terminated Plaintiff's employment.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over this matter due to the nature of the action and the amount in controversy.

10.     Venue is proper in this Court because defendant employed Plaintiff to perform work for it in Union County, New Jersey.

## THE PARTIES

11.     Plaintiff is an adult resident of the State of New Jersey.

12.     Defendant Coronis Health, LLC is a limited liability company organized under the laws of the State of Maryland and doing business in the State of New Jersey.

## FACTUAL ALLEGATIONS

### A. Plaintiff's Background and Employment with Defendant

13.     Plaintiff was born in Pakistan and immigrated to the United States at the age of about 3 or 4 years old.

14.     In 2011 Plaintiff earned a Bachelor of Science degree in Psychology from CUNY Brooklyn College.  At the time of her termination, Plaintiff was a student at New York University ("NYU") and was due to earn her Masters of Health Administration in May 2023.

15.     Plaintiff began her employment with Defendant in or about November 2020 as a fully remote employee.

16.     Throughout Plaintiff's entire employment, she worked from her home in Union, New Jersey.

17.    In her role with Defendants, Plaintiff was a high performer and received positive marks in the only performance review she received during her employment.

18.    Unfortunately, as discussed *infra*, Defendant unlawfully terminated Plaintiff's employment on December 6, 2022.

**B.  Plaintiff is Subjected to Discrimination Throughout Her Employment and Denied Promotional Opportunities**

19.    Throughout her employment, Plaintiff was subjected to disparate treatment on the basis of her race (Asian) and national origin/ethnicity (Pakistan) by Angela Butenschoen, Defendants' Vice President of HR.

20.    From the outset of Ms. Butenschoen's employment with Coronis, which commenced in October 2021, she, a white woman, frequently exhibited animosity toward Ms. Mazhar that she did not demonstrate to any of Ms. Mazhar's white, non-Asian, or non-Pakistani co-workers or team members.

21.    This animosity was present from the very beginning of Ms. Mazhar's working relationship with Ms. Butenschoen and negatively affected Ms. Mazhar's ability to function in her position with Coronis.

22.    Ms. Butenschoen also began, without reason or explanation, to assign less work to Ms. Mazhar despite Ms. Mazhar's completion of all the work assigned to her.

23.    Later, Coronis conducted a reorganization of its "pods.[1]"  During this reorganization, Plaintiff's client portfolio was cut from over 75 clients to just 24.

---

[1] Defendant organizes its business into working groups called "pods," each with a specific specialty.  Plaintiff, for example, was assigned to Defendant's pod associated with the surgical specialty.

24.     When Plaintiff objected to such a large cut in her client portfolio, Ms. Butenschoen told her, "We pieced everything together and someone had to take what was left over."

25.     Moreover, Ms. Mazhar was repeatedly passed over for promotion. In fact, despite frequently expressing her interest in advancement opportunities, Ms. Mazhar was never considered for a single promotion.

26.     Several times, Plaintiff learned of open positions for which she was qualified only after they were filled. These positions were not posted on Coronis's job posting system or otherwise advertised.

27.     At no time did anyone at Coronis tell Ms. Mazhar that she was not qualified or eligible for positions to which she aspired.

28.     Between April and July 2022, two Senior Director of Revenue Cycle positions opened for which Ms. Mazhar was qualified. Ms. Mazhar would have been interested in the positions but was never told the positions were open until after they were filled. Both of those positions were filled by white candidates, one of whom had been with the Company for less time than Ms. Mazhar, and Ms. Mazhar was never considered or interviewed. Both successful candidates worked in the same position as Plaintiff – Revenue Cycle Manager – and Plaintiff was equally or more qualified for the position.

29.     Moreover, neither successful candidate held a college degree. By contrast, Ms. Mazhar holds a Bachelor's degree and was nearing completion of a Master's degree at the time of the promotions.

30.     Growing increasingly frustrated by the lack of consideration for promotional opportunities, Ms. Mazhar inquired about the qualifications necessary to be promoted. Ms.

5

Butenschoen told her not to worry about such qualifications – a clear message to Plaintiff that she would not receive a promotion regardless of the qualifications she held.

31.     Plaintiff was denied these and other promotional opportunities because of her race, ethnicity, and national origin.

32.     In response to the animosity demonstrated toward her and the lack of consideration for advancement opportunities, Plaintiff made several complaints to HR – both orally and in writing.

33.     In one conversation with Stacey Belon of the Company's HR department, Ms. Mazhar expressed concern that she was being passed over for promotional opportunities because of her race, ethnicity, and national origin and specifically noted that the people hired for open positions for which she was qualified were virtually uniformly white.

34.     Ms. Mazhar also expressed concern that Defendant's leadership was entirely comprised of white males.  Coronis never took any action in response to Ms. Mazhar's several HR complaints and allowed her to continue to be subjected to a hostile environment.

35.     Plaintiff also complained both orally and in writing to then-President Adam Millstein about the treatment Ms. Butenschoen subjected her to, including by forwarding two emails she received from Ms. Butenshoen.

36.     In her complaints to Mr. Millstein, Plaintiff explicitly stated that she believed her poor treatment was on account of her race, ethnicity, and national origin.  Specifically, in speaking about being denied promotional opportunities, Plaintiff asked Mr. Millstein, "Is it a race thing?" Mr. Millstein merely told her that he takes such accusations "seriously," but brushed Plaintiff off and changed the subject.  Mr. Millstein never again mentioned Plaintiff's complaints and no investigation occurred.

C. **Ms. Mazhar Demands the Pay Raise She Was Promised**

37.     When Ms. Mazhar began her employment with Defendant, the company promised to raise her salary after she reached 3 months of employment.

38.     Based on representations from Coronis, Ms. Mazhar expected a 10% increase in her salary.  Coronis never delivered Ms. Mazhar this promised raise.

39.     After Coronis failed to uphold its promise to increase Ms. Mazhar's pay, Ms. Mazhar contacted HR and then-President Adam Millstein multiple times.

40.     Mr. Millstein ultimately awarded Ms. Mazhar a miniscule 1% raise.  Mr. Millstein further promised Plaintiff that she would receive an additional raise when performance evaluations were performed in March 2022.

41.     In March 2022, performance evaluations came and went, and for a second time Coronis failed to deliver on a promise to increase Plaintiff's salary.  Plaintiff again contacted Mr. Millstein to ask why she had not received her raise.

42.     Following several conversations between Plaintiff and Mr. Millstein regarding her raise, Mr. Millstein promised to increase Ms. Mazhar's salary by a total of $10,000.00 - $5,000.00 immediately, and an additional $5,000.00 increase in September 2022.  This arrangement was confirmed in an email Ms. Mazhar sent to Mr. Millstein and which Mr. Millstein forwarded to Abby Arnold, the Company's current President who was then serving as Vice President of Client Relations and Operations.

43.     When September arrived, Defendant once again failed to raise Plaintiff's salary as promised despite Plaintiff meeting all criteria necessary for the increase.

44.     In about the second week of September, Ms. Mazhar emailed Mr. Millstein and Ms. Arnold to ask when she would receive her raise.  Neither Mr. Millstein nor Ms. Arnold responded.

7

45.     About two weeks later, Ms. Mazhar sent a follow-up email that also went unanswered.

46.     Finally, after a third email regarding the missing pay increase, and more than a month after Plaintiff's initial email, Ms. Arnold told Ms. Mazhar that she would look into the matter and get back to Ms. Mazhar in about a week.

47.     Between September 2022 and the end of her employment, Ms. Mazhar followed up with Ms. Arnold and Mr. Millstein several times about her raise to no avail.

48.     Indeed, about two weeks before her unlawful termination, Ms. Mazhar inquired via email sent to Ms. Arnold and Mr. Millstein whether her raise would be retroactive to September 2022.  Ms. Arnold responded to this email by telling Plaintiff to follow up with Coronis's HR.

49.     Ms. Mazhar did not receive any definite response to any of her inquiries regarding the raise she was promised.

**D. Ms. Mazhar Announces Her Pregnancy and Inquires About Maternity Leave**

50.     In about June 2022, Plaintiff learned that she was pregnant with her second child.

51.     In about July 2022, Plaintiff notified Defendant's HR department that she was pregnant and planned to take maternity leave following the birth of her child.  Plaintiff further inquired into the process for taking maternity leave.

52.     Plaintiff notified HR of her pregnancy by sending an email to the primary HR email which is forwarded to all HR employees.

53.     In about August 2022, following the Company's acquisition by Veritas Capital, rumors circulated that Coronis planned to conduct a reduction-in-force exercise.  Company leadership assured employees that no lay-offs would be conducted until the first quarter of 2023.

54.     Ms. Mazhar was particularly concerned about the looming reduction-in-force because she planned to begin maternity leave in late January 2023, just as lay-offs were rumored to begin.

55.     Amid talk of lay-offs, Ms. Mazhar reached out to Jan Struwe, Coronis' HR Business Partner, in about October 2022, to ask whether her job would be protected because of her pregnancy. Specifically, Ms. Mazhar advised HR, and specifically Ms. Struwe, that she planned to file the paperwork required for maternity leave soon but had not yet done so (and was not yet required to do so under operative company policies or applicable federal and state laws).

56.     HR advised Ms. Mazhar in writing that her job would be protected regardless of whether her maternity leave paperwork had been submitted.

57.     Later, in November 2022, only about two weeks before her termination, Ms. Mazhar again spoke with Ms. Struwe in a Zoom call to express concern about the upcoming reduction-in-force and her maternity leave. Ms. Struwe again assured Ms. Mazhar that her job was protected.

**E.  Plaintiff is Unlawfully Terminated While Seven Months Pregnant**

58.     On December 6, 2022, Coronis Health unlawfully terminated Ms. Mazhar's employment following her disclosure of her pregnancy and multiple inquiries regarding maternity leave.

59.     On December 6, 2022, Ms. Mazhar was notified in a Zoom meeting with Ms. Butenschoen and Carol Miller, the Company's Vice President of HR that her employment was being terminated as part of a reduction-in-force exercise – one that was not supposed to begin until January 2023 at the earliest.

60.     On information and belief, Ms. Butenschoen and Ms. Miller were both aware of Plaintiff's pregnancy at the time of Plaintiff's termination.

61.     On information and belief, Ms. Butenschoen and Ms. Miller were each involved in the decision to terminate Plaintiff's employment and/or approved the termination.

62.     In the final months of her employment, Plaintiff interacted with Millstein less frequently as he transitioned into a different role.  At this time, Ms. Butenschoen assumed more authority over Plaintiff's employment and Mr. Millstein was not involved in the day-to-day management of Plaintiff's employment.  For example, when Plaintiff discussed the pod reorganization with Mr. Millstein, he told her that Ms. Butenshoen was overseeing the reorganization and he had no control over it.

63.     Plaintiff personally told Ronda Shumway that she was pregnant.  Ms. Shumway was Millstein's right had person and frequently consulted with him on personnel matters.

64.     During the December 6, 2022 Zoom meeting, Ms. Mazhar protested that HR had specifically advised her that she was protected from the lay-off because of her pregnancy.  Ms. Miller responded that because Ms. Mazhar had not filed maternity leave paperwork, she was not protected – directly contradicting what HR had told her and the requirements of the FLSA and NJFLA.

## CAUSES OF ACTION

### COUNT I
**(Discrimination in violation of the New Jersey Law Against Discrimination)**

65.     Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation in each of the proceeding paragraphs as if each was fully set forth herein.

66.     By the actions described above, among others, Defendant has discriminated against Plaintiff on the basis of her gender, pregnancy status, race, ethnicity, and national origin in

violation of the NJLAD by *inter alia,* denying her the equal terms and conditions of employment, subjecting her to a hostile work environment, and/or terminating her employment because of her gender, pregnancy status, race, ethnicity, and/or national origin.

67.     As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of the NJLAD, Plaintiff has suffered, and continues to suffer, harm for which she is entitled to an award of monetary damages and other appropriate and/or applicable relief.

68.     Defendant's unlawful and discriminatory actions constitute malicious, willful and wanton violations of the NJLAD, for which Plaintiff is entitled to an award of punitive damages.

69.     Plaintiff is further entitled to an award of statutory damages, reasonable costs, and attorney's fees.

## COUNT II
### (Retaliation in violation of the New Jersey Law Against Discrimination)

70.     Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation in each of the proceeding paragraphs as if each was fully set forth herein.

71.     Defendant retaliated against Plaintiff for her engagement in protected activities in violation of the NJLAD by, *inter alia,* denying her the equal terms and conditions of employment, subjecting her to a hostile work environment, and/or wrongfully terminating her employment because of her protected activities.

72.     As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of the NJLAD, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which she is entitled to an award of damages.

73.     As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of the NJLAD, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, for which she is entitled to an award of damages.

74.    Defendant's unlawful and retaliatory actions constitute malicious, willful, and wanton violations of the NJLAD for which Plaintiff is entitled to an award of punitive damages.

75.    Plaintiff is further entitled to an award of statutory damages, reasonable costs, and attorney's fees.

## COUNT III
### (Violation of the New Jersey Family Leave Act)

76.    Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation in each of the proceeding paragraphs as if each was fully set forth herein.

77.    Defendant has discriminated against Plaintiff pursuant to the NJFLA, which requires that employers protect employees' jobs during family leave and restore the employee to the same or similar position upon the employee's return to work.

78.    The NJFLA makes it unlawful for an employer to withhold these protections or discriminate against an employee by, *inter alia*, terminating the employee's employment for exercising or attempting to exercise the rights afforded by the NJFLA.

79.    Defendant's conduct as alleged herein constitutes unlawful employment practices and unlawful discrimination in violation of the NJFLA.

## COUNT IV
### (Violation of Family and Medical Leave Act)

80.    Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation in each of the proceeding paragraphs as if each was fully set forth herein.

81.    Defendant has discriminated against Plaintiff pursuant to the NJFLA, which requires that employers protect employees' jobs during family leave and restore the employee to the same or similar position upon the employee's return to work.

82.     The FLMA makes it unlawful for an employer to withhold these protections or discriminate against an employee by, *inter alia*, terminating the employee's employment for attempting to exercise the rights afforded by the FMLA.

83.     Defendant's conduct as alleged herein constitutes unlawful employment practices and unlawful discrimination in violation of the FMLA.

## COUNT V
### (Unpaid Wages in Violation of New Jersey Wage Payment Law)

84.     Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation in each of the proceeding paragraphs as if each was fully set forth herein.

85.     Plaintiff was an "employee" within the meaning of the NJWPL.

86.     Defendant was Plaintiff's "employer" within the meaning of the NJWPL and required to pay Plaintiff all wages due.

87.     The NJWPL states that "[n]o employer may withhold or divert any portion of an employee's wages." N.J.S.A. § 34:11-4.4.

88.     Defendant violated the NJWPL by failing and refusing, without justification, to pay Plaintiff the salary increase it promised to her.

89.     Defendant's failure and refusal to pay Plaintiff the salary increase it promised to her was not in good faith and Defendant had no reasonable grounds for believing that its failure and refusal to pay Plaintiff the salary increase it promised to her was not a violation of the NJWPL.

## COUNT VI
### (Retaliation in Violation of the New Jersey Wage Payment Law)

90.     Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation in each of the proceeding paragraphs as if each was fully set forth herein.

91.     The NJWPL specifically and explicitly forbids retaliation by an employer against an employee for complaining that the employer has failed to pay the employee the full amount of the wages owed.

92.     Specifically, the NJWPL makes it unlawful to take "retaliatory action against an employee by discharging or in any other manner discriminating against the employee because the employee has made a complaint to that employee's employer . . . that the employer has not paid the employee the full amount of wages agreed upon." N.J.S.A. § 34:11-4.10(a).

93.     As discussed in detail herein, Plaintiff engaged in protected activity by making several protected complaints to Defendant that she had not received her promised pay increase.

94.     In response to Plaintiff's protected activity, Defendant terminated Plaintiff's employment.

95.     Defendant's actions described herein constitute unlawful retaliation in violation of the NJWPL.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor and against Defendant, containing the following relief:

A.     A declaratory judgment that the actions, conduct, and practices of Defendant complained of herein violate the laws of the State of New Jersey and the United States;

B.     An injunction and order permanently restraining Defendant from engaging in any such further unlawful conduct, including policies and practices complained of herein;

C.     An award of damages against Defendant, in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages;

D.      An award of damages against Defendant, in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including, but not limited to, compensation for her emotional distress;

E.      An award of punitive damages, in an amount to be determined at trial;

F.      An award of liquidated damages, in an amount to be determined at trial;

G.      An award of unpaid wages unlawfully withheld;

H.      An award of liquidated damages in an amount equal to 200% of the wages unlawfully withheld from Plaintiff;

I.      Prejudgment interest on all amounts due;

J.      An award of Plaintiff's reasonable attorney's fees and costs to the fullest extent permitted by law; and

K.      Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

## CERTIFICATION PURSUANT TO R. 1:38-7(C)

I hereby certify that confidential personal identifiers have been redacted from documents now submitted to the Court and will be redacted from all documents in the future in accordance with R. 1:38-8(b).

## TRIAL COUNSEL DESIGNATION

Please take notice that pursuant to the provisions of R. 4:25-4, Anthony G. Bizien is hereby designated as trial counsel on behalf of Plaintiff.

Respectfully submitted,

*/s/ Anthony G. Bizien*
Anthony G. Bizien

# Civil Case Information Statement

## Case Details: UNION | Civil Part Docket# L-003008-23

**Case Caption:** MAZHAR SEHRISH  VS CORONIS HEALTH, LLC

**Case Initiation Date:** 09/13/2023

**Attorney Name:** ANTHONY G BIZIEN

**Firm Name:** ZIPIN, AMSTER & GREENBERG, LLC

**Address:** 8757 GEORGIA AVE STE 400

SILVER SPRING MD 20910

**Phone:** 3015879373

**Name of Party:** PLAINTIFF : Mazhar, Sehrish

**Name of Defendant's Primary Insurance Company
(if known):** Unknown

**Case Type:** LAW AGAINST DISCRIMINATION (LAD) CASES

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 6 JURORS

**Is this a professional malpractice case?** NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**Does this case involve claims related to COVID-19?** NO

**Are sexual abuse claims alleged by: Sehrish Mazhar?** NO

---

## THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE
CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** YES

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**


**Do you or your client need any disability accommodations?** NO
        **If yes, please identify the requested accommodation:**


**Will an interpreter be needed?** NO
        **If yes, for what language:**


**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** NO


I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

09/13/2023
Dated

/s/ ANTHONY G BIZIEN
Signed